## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| GARY KLEINSCHMIDT, Individually and on behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. |  |
| ALFI, INC., PAUL PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, RICHARD MOWSER, KINGSWOOD CAPITAL MARKETS, REVERE SECURITIES LLC, and WESTPARK CAPITAL, INC., |  |
| Defendants, |  |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Gary Kleinschmidt ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Alfi, Inc. ("Alfi" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Alfi; and (c) review of other publicly available information concerning Alfi.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Alfi: (a) common stock or warrants pursuant and/or traceable to the Registration Statement issued in connection with the Company's initial public offering (the "IPO" or

"Offering") conducted on or about May 4, 2021; and/or (b) securities between May 4, 2021 and November 15, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Alfi is a technology company that offers a software as a service in the "Digital Out of Home (DOOH) Smart Advertising segment," which includes "artificial intelligence, machine & deep learning, edge computing, Big Data, telecommunications, and the Internet of Things (IoT)."

3.      On May 5, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 4,850,746 shares of common stock and warrants to purchase 4,850,746 shares of common stock at the combined public offering price of $4.15 per share. The Company received aggregate proceeds of approximately $17.8 million from the Offering. The proceeds from the IPO were purportedly to be used to repay certain debt and for general corporate purposes, including working capital, business development, sales and marketing activities, and capital expenditures.

4.      On October 28, 2021, after the market closed, Alfi revealed that, on October 22, 2021, its Board of Directors had placed the Company's President and Chief Executive Officer ("CEO"), its Chief Financial Officer ("CFO") and Treasurer, and its Chief Technology Officer ("CTO") "on administrative leave [pending] an independent internal investigation regarding certain corporate transactions and other matters." It also stated that on October 28, 2021, Alfi terminated the CTO's employment.

5.      On this news, Alfi's stock price fell $1.24, or 22%, to close at $4.42 per share on October 29, 2021, on unusually heavy trading volume.

6.     On November 1, 2021, Alfi revealed that the internal investigation concerned the purchase of a condominium and the Company's commitment to sponsor a sports tournament, which was partially payable through the issuance of unregistered Alfi shares.

7.     On November 15, 2021, after the market closed, Alfi disclosed receipt of a document preservation request that related to an ongoing investigation by the SEC. Specifically, the Company was required to preserve "documents and data created on or after April 1, 2018 that . . . relate or refer to the condominium or the sports tournament sponsorship . . . , or financial reporting and disclosure controls, policies, or procedures." The Company also stated that it could not timely file its quarterly report on Form 10-Q for the period ended September 30, 2021. The Company also stated that its third quarter 2021 results were a "significant change" from the prior quarter's results, including because Alfi "was party to material transactions which are expected to result in significant one-time expenses."

8.     On this news, the Company's stock price fell $0.24, or 5%, to close at $4.37 per share on November 16, 2021.

9.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Alfi's employees had engaged in certain improper corporate transactions; (2) that, as a result, Alfi's disclosure controls and procedures were ineffective; (3) that, as a result of the foregoing, the Company was reasonably likely to face regulatory scrutiny, reputational harm, and penalties; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

### PARTIES

15.     Plaintiff Gary Kleinschmidt, as set forth in the accompanying certification, incorporated by reference herein, purchased Alfi securities pursuant and/or traceable to the IPO

and during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Alfi is incorporated under the laws of Delaware with its principal executive offices located in Miami Beach, Florida. Alfi's common stock trades on the NASDAQ Exchange under the symbol "ALF" and its warrants under the symbol "ALFIW."

17.     Defendant Paul Pereira ("Pereira") was the Company's Chief Executive Officer ("CEO") at all relevant times. He signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendant Dennis McIntosh ("McIntosh") was the Company's Chief Financial Officer ("CFO") at all relevant times. He signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.     Defendants Pereira and McIntosh (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

20.     Defendant John M. Cook, II ("Cook") was the Company's Chief Business Development Officer and a director of the Company at all relevant times. He signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.     Defendant Jim Lee ("Lee") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.     Defendant Justin Elkouri ("Elkouri") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.     Defendant Allison Ficken ("Ficken") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.     Defendant Frank Smith ("Smith") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.     Defendant Richard Mowser ("Mowser") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26.     Defendants Pereira, McIntosh, Cook, Lee, Elkouri, Ficken, Smith, and Mowser are collectively referred to hereinafter as the "Securities Act Individual Defendants."

27.     Defendant Kingswood Capital Markets ("Kingswood") served as an underwriter for Alfi's IPO. In the IPO, Kingswood agreed to purchase 3,003,417 shares of the Company's common stock, exclusive of the over-allotment option.

28.     Defendant Revere Securities LLC ("Revere") served as an underwriter for Alfi's IPO. In the IPO, Revere agreed to purchase 481,927 shares of the Company's common stock, exclusive of the over-allotment option.

29.    Defendant Westpark Capital, Inc. ("Westpark") served as an underwriter for Alfi's IPO. In the IPO, Westpark agreed to purchase 246,000 shares of the Company's common stock, exclusive of the over-allotment option.

30.    Defendants Kingswood, Revere, and Westpark are collectively referred to hereinafter as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

31.    Alfi is a technology company that offers a software as a service in the "Digital Out of Home (DOOH) Smart Advertising segment," which includes "artificial intelligence, machine & deep learning, edge computing, Big Data, telecommunications, and the Internet of Things (IoT)."

### The Company's False and/or Misleading
### Registration Statement and Prospectus

32.    On January 8, 2021, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.

33.    On April 26, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on May 3, 2021.

34.    On May 5, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 4,850,746 shares of common stock and warrants to purchase 4,850,746 shares of common stock at the combined public offering price of $4.15 per share. The Company received aggregate proceeds of approximately $17.8 million from the Offering. The proceeds from the IPO were purportedly

to be used to repay certain debt and for general corporate purposes, including working capital, business development, sales and marketing activities, and capital expenditures.

35.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

36.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

37.     The Registration Statement stated:

> Our disclosure controls and procedures are designed to reasonably assure that information required to be disclosed by us in reports we file or submit under the Exchange Act is accumulated and communicated to management, recorded, processed, summarized and reported within the time periods specified in the rules and forms of the SEC.

38.     The Registration Statement noted that "internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles." It stated that "In connection with this offering, we intend to begin the process of documenting, reviewing and improving our internal controls and procedures for compliance with Section 404 of the Sarbanes-Oxley Act, which will require annual management assessment of the effectiveness of our internal control over financial reporting."

39.     The Registration Statement was materially false and misleading and omitted to state: (1) that Alfi's employees had engaged in certain improper corporate transactions; (2) that, as a result, Alfi's disclosure controls and procedures were ineffective; (3) that, as a result of the foregoing, the Company was reasonably likely to face regulatory scrutiny, reputational harm, and

8

penalties; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Materially False and Misleading**

**Statements Issued During the Class Period**

40.     The Class Period begins on May 4, 2021. On that day, Alfi's common stock and warrants began publicly trading pursuant to the Registration Statement, including the statements identified in ¶¶ 37-38.

41.     On June 10, 2021, Alfi filed its quarterly report on Form 10-Q for the period ended March 31, 2021 (the "1Q21 10-Q"), stating that the Company's:

> disclosure controls and procedures are effective to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act (i) are recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms and (ii) are accumulated and communicated to management, specifically our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

42.     The 1Q21 10-Q further stated that "[t]here was no change in our internal control over financial reporting . . . that occurred during the fiscal quarter ended March 31, 2021 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

43.     On August 16, 2021, Alfi filed its quarterly report on Form 10-Q for the period ended June 30, 2021 (the "2Q21 10-Q"), stating that the Company's:

> disclosure controls and procedures are effective to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act (i) are recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms and (ii) are accumulated and communicated to management, specifically our chief executive officer and chief financial officer, as appropriate to allow timely decisions regarding required disclosure.

44.     The 2Q21 10-Q further stated that "[t]here was no change in our internal control over financial reporting . . . that occurred during the fiscal quarter ended June 30, 2021 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

45.     The 2Q21 10-Q also noted the purchase of an "Office Condo," stating that "[t]he Company signed a contract to acquire additional office space for $1,100,000 in Miami Beach, FL on July 12, 2021," which was "expected to close in late August."

46.     The above statements identified in ¶¶ 40-45 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Alfi's employees had engaged in certain improper corporate transactions; (2) that, as a result, Alfi's disclosure controls and procedures were ineffective; (3) that, as a result of the foregoing, the Company was reasonably likely to face regulatory scrutiny, reputational harm, and penalties; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

47.     The truth began to emerge on October 28, 2021, after the market closed, when Alfi revealed that its Board of Directors had placed the Company's President and CEO, its CFO and Treasurer, and its CTO "on administrative leave [pending] an independent internal investigation regarding certain corporate transactions and other matters." In a Form 8-K filed with the SEC, the Company stated:

> On October 22, 2021, the Board of Directors (the "Board") of Alfi, Inc. (the "Company") placed each of Paul Pereira, the Company's President and Chief Executive Officer, Dennis McIntosh, the Company's Chief Financial Officer and Treasurer, and Charles Pereira, the Company's Chief Technology Officer, on paid administrative leave and authorized an independent internal investigation regarding certain corporate transactions and other matters.

*     *     *

On October 28, 2021, Mr. C. Pereira's employment with the Company was terminated.

48.     On this news, Alfi's stock price fell $1.24 or 22%, to close at $4.42 per share on October 29, 2021, on unusually heavy trading volume.

49.     On November 1, 2021, Alfi filed another Form 8-K with the SEC, stating that its independent registered public accounting firm, Friedman LLP, had resigned. Also, one of the Company's directors, Richard Mowser, resigned because, among other things, he believed that the decision to replace the CEO, CFO, and CTO "in my opinion was personal and calculated and driven by certain directors/shareholders to take control of the company without any regard for due process." It also revealed information about the corporate transactions subject to the internal investigation:

> The corporate transactions that precipitated the Board's actions to place the executives on paid administrative leave and to authorize the independent internal investigation included: (i) the Company's purchase of a condominium for a purchase price of approximately $1.1 million and the related erroneously certified corporate resolution regarding the unanimous approval by the Board and the Company's stockholders of such purchase, and (ii) the Company's commitment to sponsor a sports tournament in the amount of $640,000, a portion of which was payable through the issuance by the Company of unregistered shares of the Company's common stock, and as to which the Company would be obligated to pay additional cash amounts if the net proceeds received by the recipient upon the sale of such shares are less than an amount specified in the contract and for which the Company would be given a credit toward sponsorship or attendance at events in the future if the net proceeds received by the recipient upon the sale of such shares exceed an amount specified in the contract. (The Company's entry into the contract for the purchase of the condominium was disclosed in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2021.) ***These transactions were undertaken by the Company's management without sufficient and appropriate consultation with or approval by the Board.*** The independent internal investigation is expected to investigate the details of the above-noted transactions and any other matters that come to the Board's attention regarding actions taken by the executives in their management of the Company. ***One of the goals of the independent internal investigation is to help the Company in developing improved corporate governance policies and procedures to ensure that the Board is provided the opportunity to consider and provide appropriate***

***input to the Company's management on significant corporate transactions.*** If, during the course of the independent internal investigation, the Board uncovers any wrongdoing, it will take appropriate action with respect to the person or persons responsible therefor.

50.     The above statements identified in ¶ 47 and ¶ 49 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company was reasonably likely to face regulatory scrutiny, reputational harm, and penalties for certain improper transactions; and (2) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

51.     On November 15, 2021, after the market closed, Alfi filed a Form 8-K with the SEC, in which it disclosed receipt of a document preservation request that related to an ongoing investigation by the SEC. Specifically, the Company stated:

> On November 9, 2021, the Company received a letter from the staff of the Securities and Exchange Commission (the "SEC") indicating that the Company, its affiliates and agents may possess documents and data relevant to an ongoing investigation being conducted by the staff of the SEC and notifying the Company that such documents and data should be reasonably preserved and retained until further notice. The materials to be preserved and retained include documents and data created on or after April 1, 2018 that: (i) were created, modified or accessed by certain named former and current officers and directors of the Company or any other officer or director of the Company; or (ii) relate or refer to the condominium or the sports tournament sponsorship identified in the Company's Current Report on Form 8-K filed on November 1, 2021, or financial reporting and disclosure controls, policies or procedures. The Company intends to cooperate fully with the SEC in this matter.

52.     Also on November 15, 2021, Alfi filed a Notification of Late Filing on Form 12b-25 with the SEC, stating that it could not timely file its quarterly report on Form 10-Q for the period ended September 30, 2021. Alfi also stated that it "anticipates a significant change in the

results of operations from the quarter ended June 30, 2021, including because Alfi "was party to material transactions which are expected to result in significant one-time expenses." The Company cited the following factors causing the delay:

> Alfi, Inc. (the "Company") is unable, without unreasonable effort or expense, to file its Quarterly Report on Form 10-Q for the quarter ended September 30, 2021 (the "Quarterly Report") by the November 15, 2021 filing date applicable to smaller reporting companies: (i) due to recent changes in the Company's Chief Executive Officer and Chief Financial Officer and in the Chair of the Audit Committee (the "Audit Committee") of the Company's Board of Directors (the "Board"); and (ii) because the Company has not yet engaged a new independent registered public accounting firm, which is needed to provide the required review of the Company's financial statements to be filed as part of the Quarterly Report.

53.     On this news, the Company's stock price fell $0.24, or 5%, to close at $4.37 per share on November 16, 2021.

54.     By the commencement of this action, Alfi shares were trading as low as $2.77 per share, a nearly 33% decline from the $4.15 per share IPO price.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Alfi (a) common stock or warrants pursuant and/or traceable to the Registration Statement issued in connection with the Company's initial public offering (the "IPO") conducted on or about May 4, 2021; and/or (b) securities between May 4, 2021 and November 15, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

56.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Alfi's shares actively traded on the NASDAQ.  While

the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Alfi shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Alfi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Alfi; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

61.     The market for Alfi's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Alfi's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Alfi's securities relying upon the integrity of the market price of the Company's securities and market information relating to Alfi, and have been damaged thereby.

62.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Alfi's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Alfi's business, operations, and prospects as alleged herein.

63.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Alfi's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or

misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

64.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

65.     During the Class Period, Plaintiff and the Class purchased Alfi's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

66.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Alfi, their control over, and/or receipt and/or modification of Alfi's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Alfi, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

67.     The market for Alfi's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Alfi's securities traded at artificially inflated prices during the Class Period.  On June 28, 2021, the Company's share price closed at a Class Period high of $18.59 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Alfi's securities and market information relating to Alfi, and have been damaged thereby.

68.     During the Class Period, the artificial inflation of Alfi's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Alfi's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Alfi and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

69.     At all relevant times, the market for Alfi's securities was an efficient market for the following reasons, among others:

(a)     Alfi shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

17

(b)      As a regulated issuer, Alfi filed periodic public reports with the SEC and/or the NASDAQ;

(c)      Alfi regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)      Alfi was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

70.     As a result of the foregoing, the market for Alfi's securities promptly digested current information regarding Alfi from all publicly available sources and reflected such information in Alfi's share price. Under these circumstances, all purchasers of Alfi's securities during the Class Period suffered similar injury through their purchase of Alfi's securities at artificially inflated prices and a presumption of reliance applies.

71.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the

importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

72.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Alfi who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

73.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

74.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

75.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

76.     Alfi is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

77.     As issuer of the shares, Alfi is strictly liable to Plaintiff and the Class for the misstatements and omissions.

78.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

79.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

80.     Plaintiff acquired Alfi shares pursuant and/or traceable to the Registration Statement for the IPO.

81.     Plaintiff and the Class have sustained damages.  The value of Alfi shares has declined substantially subsequent to and due to the Defendants' violations.

<u>**SECOND CLAIM**</u>

**Violation of Section 15 of the Securities Act**

**(Against the Securities Act Individual Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

83.     This count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act.

84.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Alfi within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Alfi to engage in the acts described herein.

85.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

86.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## THIRD CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against Alfi and the Individual Defendants

87.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

88.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Alfi's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

89.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Alfi's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

90.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Alfi's financial well-being and prospects, as specified herein.

91.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Alfi's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Alfi and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

92.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the

creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

93.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Alfi's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

94.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Alfi's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in

which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Alfi's securities during the Class Period at artificially high prices and were damaged thereby.

95.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Alfi was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Alfi securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

96.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

97.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### FOURTH CLAIM

#### Violation of Section 20(a) of The Exchange Act

#### Against the Individual Defendants

98.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

99.     Individual Defendants acted as controlling persons of Alfi within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

100.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

101.    As set forth above, Alfi and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 15, 2021                 Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Adam D. Warden*
Joseph E. White, III (FL Bar No. 621064)
Adam D. Warden (FL Bar No. 873691)
Jonathan D. Lamet (FL Bar No. 106059)
7777 Glades Road
Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
jwhite@saxenawhite.com
awarden@saxenawhite.com
jlamet@saxenawhite.com

*Local Counsel for Plaintiff*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112

Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff*